UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CURTIS LEWIS JONES,

    Plaintiff,

v.

THOMAS FINCO, et al.,

    Defendants.
_____/

Case No.  2:16-cv-116
Hon. GORDON J. QUIST

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Curtis Lewis Jones pursuant to 42 U.S.C. § 1983.  Plaintiff currently resides at the Chippewa Correctional Facility.  Plaintiff has sued Defendants Michigan Department of Corrections Deputy Director Thomas Finco, and Food Service Director Newhouse who works under a contract between her employer Aramark Correctional Services and the Michigan Department of Corrections to provide food services to inmates.

Plaintiff is a member of the Nation of Islam religion.  Plaintiff alleges that he was provided a religious meal that contained items that violated his religious beliefs during Ramadan in 2015, which occurred between June 18 and July 17.  As a result, Plaintiff asserts that he lost 8000 calories of food over a thirty-day period (ECF No. 32, PageID.343).  Specifically, Plaintiff complains that he received peanut butter 45 times (275 calories per serving), grits 9 times (146 calories per serving), green beans 4 times (44 calories per serving), western beans 6 times (225 calories per serving), potatoes 4 times (179 calories per serving), and cornbread 2 times (80

calories per serving) during Ramadan.  Plaintiff claims that he was deprived the equivalent of three days of food during the Ramadan period.[1]  Each of these food items violated Plaintiff's Nation of Islam religious beliefs and no substitutions were offered by Defendants.  Plaintiff alleges that Defendants failure to substitute food items in his religious meals deprived him of his rights under the First, Eighth, and Fourteenth Amendments, as well as under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc (RLUIPA).  Defendant Newhouse filed a motion for summary judgment (ECF No. 29).  Defendant Finco filed a separate motion for summary judgment[2] (ECF No. 30).  Plaintiff filed a response (ECF No. 32).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416

---

[1] It is noted that Plaintiff's claims regarding the lost number of calories is inconsistent.
[2] "Defendant Kenneth McKee" who is the Deputy Director of Correctional Facilities has gratuitously joined in this motion.  Plaintiff never named Kenneth McKee in his complaint.  Plaintiff never served Kenneth McKee with a complaint.  Defendant Kenneth McKee has not intervened in this action.  Defense counsel has not explained why "Defendant Kenneth McKee" appears in this action.

(6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Newhouse argues that Plaintiff failed to exhaust his administrative grievance remedies because his grievance did not "mention" or "imply" a violation of the Eighth Amendment, the Fourteenth Amendment, or RLUIPA. Plaintiff's Step I grievance stated:

> I spoke with Foodservice Officials and was informed to write a Kite, and I wrote a kite to Food Service Director Newhouse explaining my dietary restrictions and the 2015 Ramadan Menu violations. . . . This grievance is being wrote on Assist. Director (MDOC) Thomas Finco; MDOC John Doe (Dietician) and LMF CFA Facility Foodservice Director Newhouse for violating Prison Jones 1st Amendment (U.S. Const) Religious Freedoms by failing to provide a diet during 2015 Ramadan consistent with his dietary beliefs of the Nation of Islam under leadership of the Hon. Elijah Muhammad as given in How To Eat To Live Vol. I & II. During 2015 Ramadan from June 18, 2015 until July 17, 2015 (30 day period) MDOC officials served Prison Jones a snack bag containing: (a). Peanut Butter and a main Meat Bagged Meal containing: (a). Peanut Butter; (b). Corn Bread: (c). Simmered Western Beans; (d). Potato Salad; and (e). Bean Salad w/Onions, while well aware that Prisoner Jones belief strictly forbids and/or prohibits the consummation of Peanuts; Peanuts Butter and any beans other than Navy Beans. In fact, *Heard v. Caruso*, 2011 U.S. Dist. Lexis 97074 (WD Mich. 2011) put these officials on notice that NOI dietary restriction prohibits 35 different kinds of foods under Mr. Jones diet. Prisoner asks that his prohibit[ed] foods be substituted as he is receiving calories less than 2,350 as given in *Heard v. Finco,* 1;13-cv-373 (W.D. Mich. July 10, 2013).

3

(ECF No. 29-3, PageID.190).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If

4

oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Contrary to Defendant Newhouse's argument, there is no requirement that a prisoner set forth in his grievance the exact constitutional amendments and federal statutes that he may invoke in a future lawsuit. A prisoner needs to put the prison on notice of the factual basis of his claims. In this case, Plaintiff asserted sufficient facts in his grievance establishing that he believed his religious rights were being violated. These facts support his First Amendment and RLUIPA claims. Similarly, Plaintiff stated that he was not receiving enough calories which could support his Eighth Amendment claim. Finally, Plaintiff asserted that he was being treated differently because he was a member of the Nation of Islam. This allegation could support his Fourteenth Amendment claim. Moreover, Plaintiff exhausted his claims through Step III of the grievance process and the prison decided the grievance on the merits at each Step. The prison never rejected the grievance under any MDOC procedural rule. *Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017); *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished). In the opinion of the undersigned, Plaintiff properly exhausted his claims.

Defendant Newhouse argues that she is employed by the private corporation Aramark and that she cannot be a State actor for purposes of 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Plaintiff named Defendant Newhouse as the Food Service Director at the Alger Correctional Facility.  (ECF No. 1, PageID.7). The case heading in the complaint lists Defendant "Ms. Newhouse (LMF) Foodservice Director (MDOC\Aramark)".  (PageID.1).  Defendant Newhouse has not submitted an affidavit explaining her responsibilities either at the prison or at Aramark.  The record is silent concerning whether her job duties are "fairly attributable to the State."  Accordingly, it is the opinion of the undersigned that dismissal on the basis that Defendant Newhouse is not a State actor for purposes of § 1983 is not appropriate.

Both Defendants argue that Plaintiff's Eighth Amendment claim should be dismissed.  Plaintiff has asserted that his Eighth Amendment rights were violated because Defendants failed to replace 8000 calories over a 30-day period that he was unable to eat due to

7

his religious beliefs. Plaintiff has not asserted that he was denied meals, but asserts that he was continually given food items with his meals such as peanut butter that he could not eat. Plaintiff argues that he needed 2600 calories each day and that he was not reaching that amount because he could not consume every item that he received with his meal each day. Michigan Department of Corrections Registered Dietitian/Nutritionist Patricia Willard submitted an affidavit which states that Plaintiff received an average of 2,867 calories each day during Ramadan 2015. The regular meal menu during that time period contained only 2640 calories. (ECF No. 31-8, PageID.323).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate

indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 960, 954 (6th Cir. 1987). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "[did] not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. Plaintiff does not allege that his health suffered as a result of the deprivation, or that the meals he did receive were inadequate to sustain his health. Plaintiff simply wanted more food or substitutions for the few calories that he was unable to eat from some served meals.[3] Plaintiff was not denied food. *Heard v. Finco*, 2014 WL 137432 (W.D. March 31, 2014) (allegation that a prisoner was denied food because of his religious preference does not support an Eighth Amendment claim). Plaintiff has not shown that he was denied an adequate amount of calories each day. In the opinion of the undersigned, Plaintiff's Eighth Amendment claim should be dismissed.

Plaintiff has asserted that Defendants violated his First Amendment rights to practice his Nation of Islam beliefs by not providing him with food substitutions for the few items of food that his religious beliefs would not allow him to consume. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon

---

[3] Plaintiff attached a copy of the Ramadan Meat Bagged Meal menu to his complaint (ECF No. 1-1, PageID.22-26). It is noted that Plaintiff was provided with many other food choices for each meal and it appears that his Ramadan meal diet was not calorie deficient.

it must generally be justified by a "compelling state interest". *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See*, e.g., *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

> Prisoners have a constitutional right to be served meals that meet nutritional needs; indeed, they have a constitutional right to be served meals that do not violated their sincerely-held religious beliefs. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). But there is no constitutional right for each prisoner to be served the specific foods he desires-such as Halil meat-in prison. See *Spies v. Volovich*, 173 F.3d 398, 406-07 (6th Cir. 1999) (holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and "the fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.").

*Robinson v. Jackson*, 615 Fed. Appx. 310, 314 (6th Cir. 2015).

In *Welch v. Spaulding*, 627 Fed. App'x 479 (6th Cir. 2015), the plaintiff alleged that he was not provided with sufficient calories during Ramadan to support his Nation of Islam religious diet. The plaintiff was allegedly receiving only half of the 2600 calories that the general prison population received. In that case, the court declined to set a minimum caloric number that would satisfy a First Amendment religious claim, but instead concluded that the amount of calories provided to an inmate was fact specific as to whether the amount of food provided adequate nutrition or was insufficient to maintain the nutritional needs of a prisoner. Therefore, in order to show a violation of his First Amendment rights, Plaintiff must establish that the Defendants

11

imposed a substantial burden on Plaintiff's exercise of his religion when they failed to substitute certain items in his Ramadan meal diet that failed to comply with his religious beliefs. *McKenzie v. Michigan Dept. of Corrections*, 2013 WL 5963115 (W.D. Mich., Nov. 8, 2013); *Abdullah v. Fard*, 974 F. Supp. 1112, 1118 (N.D. Ohio, 1997) affirmed, 173 F.3d 854 (6th Cir. 1999).

It is clear that upon review of the record in this case, Plaintiff received an adequate Ramadan diet that complied with his Nation of Islam beliefs. A review of the menu provided by Plaintiff during Ramadan 2015, shows that Plaintiff received nutritional meals with only minor items that he believed violated his religious rights. Plaintiff did not consume certain items, but still was able to eat nutritional meals. For instance, when Plaintiff received peanut butter he also received jelly. The record establishes that Plaintiff received sufficient calories even without eating certain items such as peanut butter. (ECF No. 1-1, PageID.22-26) In the opinion of the undersigned, Plaintiff cannot show that Defendants substantially burdened his free exercise of his religion by not substituting items in his Ramadan meals that violated his Nation of Islam beliefs.

Similarly, in the opinion of the undersigned, Plaintiff's RLUIPA claim also fails. In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). Likewise, the Supreme

12

Court has indicated that "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 135 St. Ct. 853, 862 (2015). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held*,' not whether 'the belief is accurate or logical.'").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007) (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"). Similarly, if a policy requires a petitioner to "engage in conduct that seriously violates [his] religious beliefs" or face disciplinary action, then the burden is substantial. *Hobbs*, 135 S. Ct. at 862.

13

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 258 F. App'x at 734.  Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render the word "substantial" meaningless. *See Civil Liberties for Urban Believers*, 342 F.3d at 761.  In the opinion of the undersigned, the facts are clear that Plaintiff's religious beliefs were not substantially burdened when Defendants served him items in his Ramadan meal that did not comply with his Nation of Islam beliefs. Plaintiff gave those few items away and did not have to choose to violate his religious beliefs to eat sufficiently nutritious meals.

Defendants argue that Plaintiff's Fourteenth Amendment equal protection claim should be dismissed.  Plaintiff alleges that the Ramadan meal diet was adequate for other Muslims, but was not designed for Nation of Islam followers.  Plaintiff asserts that he was being treated differently than other Muslim prisoners.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*,

473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. Contrary to Plaintiff's conclusions, Plaintiff has failed to show purposeful discrimination against his Nation of Islam beliefs. Plaintiff was provided with an adequate menu selection with enough calories. The amount of food provided in Plaintiff's Ramadan meals exceeded any minimum caloric requirements and was nutritionally satisfactory even if Plaintiff was not provided substitution for the few items that failed to comply with his religious beliefs.

Moreover, Defendants are entitled to the defense of qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An

15

"objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his clearly established First Amendment, Eighth Amendment, Fourteenth Amendment, and RLUIPA rights were violated, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendants' motions for summary judgment (ECF No. 29 and ECF No. 30) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary

judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: December 20, 2017                        */s/ Timothy P. Greeley*
                                                TIMOTHY P. GREELEY
                                                UNITED STATES MAGISTRATE JUDGE